# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JESSE LEE HENRY RUSSO**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:11cv853 |
| ) | **Electronic Filing** |
| **MICHAEL J. ASTRUE**, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

September 7, 2012

## I. INTRODUCTION

Jesse Lee Henry Russo ("Russo" or "Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 – 1383f ("Act"). The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted.

## II. PROCEDURAL HISTORY

Russo protectively filed for Supplemental Security Income ("SSI") on October 31, 2008, alleging disability beginning on October 1, 2008. R. 9. The claim was initially denied on March 2, 2009. *Id.* Russo filed a timely request for an administrative hearing. R. 63-64. On April 22, 2010, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge James

J. Pileggi (the "ALJ"). R. 20. Russo, who was represented by counsel, appeared and testified at the hearing. R. 22-40. Fred A. Monaco ("Monaco"), an impartial vocational expert ("VE"), also testified at the hearing. R. 41-43. In a decision dated June 10, 2010, the ALJ determined that Russo was not disabled within the meaning of the Act. R. 9-16.

On August 9, 2010, Plaintiff sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. 101. The Appeals Council denied the request for review on May 3, 2011, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1. Russo then filed this civil action seeking judicial review of the Commissioner's decision.

### III. STATEMENT OF THE CASE

Russo was born on December 13, 1983, making him almost twenty-five (25) years of age at the alleged onset of his disability. R. 95. Russo alleged that he was disabled due to major depressive disorder, anxiety, bipolar disorder and attention deficit hyperactivity disorder ("ADHD"). *Id.* Though Russo worked briefly as a mechanic and stock person, the ALJ determined that Russo had no past relevant work. R. 25-26.

Russo has a ninth grade education, and at the time of the hearing, had not completed a GED. R. 24. At the time of his administrative hearing, Russo was not married and lived with his parents. R. 25, 30. Russo maintained a valid driver's license and there were no restrictions on his driving. R. 26. Russo also testified that he had no drug or alcohol problems. *Id.*

On November 13, 2007, Russo had a behavioral health assessment at Sharon Regional Behavioral Health Services. R. 251. Russo was dressed appropriately and was cooperative. R.253. He was found to have "fair" concentration, impulse control, insight and judgment. *Id.* Russo reported no hallucinations or delusions, and had no suicidal or homicidal ideation. *Id.*

Further, his memory, thoughts and cognitive ability were within normal limits. *Id.* Russo was assessed a global assessment of functioning ("GAF") score of 59[1] and was prescribed medication including adderall. R. 254.

The treatment notes indicate that Russo continued to be seen at Sharon Regional Behavioral Health Services from November 2007, through June of 2008, and are summarized as follows:

> November 27, 2007 – doing fairly well, mood stable without anxiety, no hallucinations or delusions, thoughts relevant, goal directed, fair concentration/attention. R. 250.
>
> December 18, 2007 - doing fairly well, concentration/focus good, able to stay on task, sleep good, mood good. R. 249.
>
> January 15, 2008 - doing fairly well, medication helps concentration, sleeping o.k, work going o.k. R. 248
>
> February 26, 2008 – doing great, concentration and attention good, work going well, sleep good. R. 247.
>
> April 1, 2008 – doing good, concentration and attention continue to be o.k., sleep good, mood stable, work going well, no concerns. R. 246.
>
> June 13, 2008 - doing fairly well, mood good-stable, sleep disturbed, injured back-jumping on trampoline, concentration good, no depression, no suicidal or homicidal ideations. R. 245.

On October 20, 2008, Russo was treated at Sharon Regional Behavioral Health Services by psychiatrist Jason Rock, M.D., and he continued to see Dr. Rock through February 5, 2010. R.

---

[1] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 51 – 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning". *Id.*

237-244. During this period, Russo continued to do well, and reported no depression and no suicidal or homicidal ideation. R. 237-244.

On February 10, 2009, Russo saw psychologist Martin Meyer, Ph. D. ("Meyer") for a clinical psychological disability evaluation. R. 197-204. As a result of his meeting with Russo, Meyer reported that Russo had driven to the meeting unaccompanied, was adequately attired, his hygiene was good and he established good eye contact with the evaluator. R. 199. Meyer observed no abnormalities in body movement, spontaneous and coherent speech, no disturbance in thought process or neural sensory distortions, and found Russo's mood and affect to be situationally appropriate. *Id.* Russo's social judgment was found to be appropriate for his age, mental ability and experience, but Meyer found his test judgment to be inappropriate. R. 200. Based upon this meeting, Meyer diagnosed Russo with Bipolar I Disorder, Panic Disorder with Agoraphobia, Attention Deficit Hyperactivity Disorder and Learning Disorder. *Id.* Meyer also found Russo had a below average I.Q. and assessed him with a GAF of 50[2]. *Id.*

Meyer found that Russo could understand, remember and carry out short simple instructions, but had moderate restrictions in his ability to understand, remember and carry out detailed instructions and to make judgments on work-related decisions. R. 203. Meyer also opined that Russo had extreme limitations on his ability to interact appropriately with the public and respond appropriately to pressures in a work setting; marked limitations in his ability to interact with supervisors; and moderate limitations to interact appropriately with co-workers and respond appropriately to changes in a routine work setting. *Id.*

---

[2] An individual with a GAF of 41 – 50 may have "[s]erious symptoms (e.g., suicidal ideation …)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)". AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR) 34 (4th ed. 2000).

On February 27, 2009, state agency psychologist Kerry Brace ("Brace") performed a Mental Residual Functional Capacity Assessment of Mr. Russo. R. 211-227. Brace found that Meyer's statements regarding Russo's abilities in the areas of personal and social adjustments and other work related activities were inconsistent with all the medical and non-medical evidence. R.213. Brace determined that Russo would be able to perform simple, routine, repetitive work in a stable environment. *Id.* Russo could understand, retain and follow simple job instructions, and would be able to maintain regular and punctual attendance. *Id.* Brace found Russo to be self-sufficient, functional in production oriented jobs requiring little independent decision making. *Id.* Brace opined that Russo had the ability to manage the mental demands of many types of jobs not requiring complicated tasks. *Id.*

On February 15, 2010, Dr. Rock opined that Russo had a limited but satisfactory ability to follow work rules, relate to co-workers, use his judgment, and to understand, remember and carry out both simple and detailed work instructions. R. 233-234. Dr. Rock further found that Russo had a seriously limited but not precluded ability to deal with the public, function independently, interact with supervisors, deal with work stress, maintain attention, and to understand, remember and carry out complex job instructions. *Id.*

At the administrative hearing, the ALJ asked the VE whether there were any jobs in the national economy for a hypothetical individual of the same age as Russo, with the same education and work experience, with no exertional limitations, but limited to simple repetitive tasks involving routine work processes and settings, no high stress activities including work requiring high quotas or close attention to quality production standards. R. 41. Such individual would not be able to engage in teamwork and have no more than incidental interaction with the

public. *Id.* In the "light"[3] level of exertion category, the VE gave an abrasive machine operator as an example position and estimated approximately 187,000 positions in the national economy. *Id.* In the "medium"[4] level of exertion category, the VE gave example positions of hand packer, with an estimated 333,000 positions in the national economy, and cleaner, especially a cleaner working in the evening in schools, hospitals or office buildings, of which there are an estimated 2.2 million such positions in the national economy. R. 41-42.

After a comprehensive review of the record, the ALJ determined that Russo had not engaged in substantial gainful activity since the application date, October 31, 2008. R.11. The ALJ found that Russo had severe impairments, including: attention deficit hyperactivity disorder; depressive disorder, bipolar disorder, panic disorder, and learning disorder. *Id.* These impairments caused more than minimal limitation on Russo's ability to perform work-related activities. *Id.* The ALJ concluded that Russo's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ determined that Russo had the "residual functional capacity"[5] ("RFC") to perform the full range of work at all exertional levels with nonexertional limitations as follows:

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[5] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

(1) Russo is limited to work that is simple and repetitive in nature, involving routine work processes and settings; (2) no high stress work, meaning no high quotas or a required attention to quality production standards; and (3) no engaging in team-type activities and no more than incidental interaction with the public. R. 13. Based on the testimony of the VE, and considering Russo's age, education, work experience, and residual function capacity, the ALJ found that Russo was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and was not disabled as defined under the Act. R. 16.

**IV.    STANDARD OF REVIEW**

The standard of review in a social security case is whether substantial evidence exists in the record to support the Commissioner's opinion. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Additionally, if the Commissioner's findings of fact are supported by substantial evidence, they must be accepted as conclusive. 42 U.S.C. 405 (g); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In making this determination, the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional facts from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n.7 (3d Cir. 2001). The Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. § 404.1520. The Supreme Court summarized this five step process:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920 (f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

V. **DISCUSSION**

Under the Social Security Act, a "person who has a 'disability' is entitled to SSI payments". *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). A disability is the "inability to engage in substantial gainful activity by reason of any medically determinable physical or

8

mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Ramirez v. Barnhart*, 372 F.3d at 550. However, a claimant is potentially eligible for benefits only if the claimant's impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In this instance, the ALJ proceeded through all five steps in the sequential evaluation process and found that Russo was capable of performing other jobs existing in the national economy, and therefore, was not disabled under the Act.

Russo contends that the ALJ failed to properly assess the valid medical evidence of record, as well as and Russo's own testimony regarding his condition, in determining that he was not precluded from gainful employment. Russo further contends that his daily emotional difficulties, which preclude him from most activities three (3) weeks out of every month, and his erratic sleep patterns preclude him from employment.

The ALJ, not the treating or examining physicians or State agency consultant, must make the ultimate disability and RFC determinations. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although the opinions of treating and examining physicians often deserve more weight than the opinions of doctors who review records, the Third Circuit clearly holds that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) *see also* 20 C.F.R. § 404.1527(d)(1)–(2). State agent opinions also merit significant consideration. *See* SSR 96-6p, 1996 SSR LEXIS 3 ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .").

An ALJ, however, may not simply "ignore the opinion of a competent, informed, treating physician." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986). Further, when making a residual functional capacity determination, "an ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). The treating physician's opinion is entitled to controlling weight if the "treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527(d)(2). In making a RFC determination, then, the ALJ must consider all evidence before him, and although the ALJ may weigh credibility, he must explain the weight given to physician opinions and the degree to which a claimant's testimony is credited, as well as indicate which evidence he rejects and his reason for discounting such evidence. *See* 20 C.F.R. § 404.1527(f)(2)(ii); *see also Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).

The ALJ's RFC assessment was thorough, as he examined the medical evidence spanning several years and explained his decision to give certain medical evidence more weight than other such evidence. R. 14-15. The Court finds that the ALJ gave proper weight to the medical evidence in determining Russo's RFC. The record evidence of Russo's mental health treatment consists only of the treatment notes from Sharon Regional Behavioral Health Services from November 2007, through February 5, 2010. R. 237-254. During this period, the doctors' treatment notes indicate that Russo had responded favorably to treatment, reporting that he was doing well, his concentration/focus and attention were good, his depressive periods were improving, and "no depression" was reported on several occasions, and no suicidal or homicidal ideation was reported. *Id.* Specifically, the treatment notes dated February 26, 2008, indicate that

Russo was "doing great," his concentration and attention were good, work was going well, and his sleep was good. R. 247. Dr. Rock's most recent treatment notes dated December 28, 2009, and February 2, 2010, indicate that Russo was doing well, he had good sleep and appetite, had no depression, no suicidal or homicidal ideation, he had a good relationship with his girlfriend and he finished working on a car for his friend. R. 237-238.

Based on the above evidence, the ALJ found that Russo was limited to "simple, low stress work with limited interaction" with the public. R. 14. The ALJ also relied on the State agency psychologist, Dr. Brace, who concluded that Russo was able to meet the basic mental demands of competitive work on a sustained basis. *Id.* Specifically he found Russo able to perform simple, routine, repetitive work in a stable environment. *Id.* The ALJ gave Dr. Brace's opinion great weight because it was "well-supported by the consultative mental status examination findings and by the treatment notes from [Russo's] treating psychiatrist." R. 14.

On February 15, 2010, Dr. Rock provided a Rating of Impairment Severity Listing 12.04 indicating that Russo's mental health impairments were severe, and caused seriously limited ability to function across a range of mental work-related functions. R. 230-235. After giving due consideration Dr. Rock's opinion as a treating specialist, the ALJ gave little weight to his opinion because the severity of Dr. Rock's assessed limitations was inconsistent with, and had no support in, Russo's actual treatment records. Though Dr. Rock's assessment indicated that Russo's mental health impairments seriously limited his ability to function in a work-related environment, Russo's treatment records indicate no inpatient care, hospitalizations, emergency treatment, suicidal or homicidal ideation, or psychosis associated with decompensation. Moreover, Dr. Rock reported that Russo's medication effectively treated his symptoms, and that he maintained good relationships with his family and his girlfriend.

The ALJ also gave little weight to a portion of Martin Meyer's psychological disability evaluation of the Plaintiff. Meyer opined that Russo could understand, remember and carry out short simple instructions, but had moderate restrictions in his ability to understand, remember and carry out detailed instructions or to make judgments on work-related decisions. R. 203. The ALJ gave great weight to this opinion because it was well supported by the objective medical findings, mental status examinations, and intelligence testing in the record. R. 15. The ALJ, however, gave little weight to Meyer's opinion that Russo had extreme limitations on his ability to interact appropriately with the public and to respond appropriately to pressures in a work setting, and had marked limitations in his ability to interact with supervisors. The ALJ found that such levels on limitation were not supported by Russo's activities of daily living or his treatment notes. Accordingly, the Court finds substantial evidence in the record to support the weight that the ALJ gave to the medical evidence and opinions set forth in the record.

Russo also argues that the ALJ erred in failing to give his testimony complete credibility. Russo contends that his testimony regarding his condition and the effects his condition has upon his ability to carry on normal daily living activities and work-related functions precludes him from securing gainful employment. Though the ALJ found that Russo's mental impairments could reasonably be expected to cause the symptoms to which he testified at the hearing, he found Russo's testimony regarding the intensity, persistence and limiting effects inconsistent with the objective medical evidence.

If supported by substantial evidence, the ALJ's credibility findings may not be disturbed on appeal. *Hirschfeld v. Apfel*, 159 F. Supp. 2d 802, 811 (E.D. Pa. 2001). Moreover, a claimant's statements about his symptoms do not alone establish disability. 42 U.S.C. § 423 (d)(5)(A); 20 C.F.R. § 404.1529(c). Rather, a disability must be proven through objective medical evidence. The ALJ must consider a claimant's daily activities, the location, frequency,

and intensity of the symptoms, the type and dosage of medication, and any other measures used to relieve any alleged symtom. *See* 20 C.F.R. § 404.1529(c)(3) (2003). In making such determinations, however, the ALJ is given great discretion, and his or her findings are entitled to judicial deference. *See Bembery v. Barnhart*, 142 Fed. Appx. 588, 591 (3d Cir. Pa. 2005); *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

In this instance, the ALJ found that Russo's testimony regarding severe depressive symptoms, sometimes lasting three (3) weeks in a month to be inconsistent with both his activities of daily living and the objective medical evidence in the record. The consultative mental evaluations indicated that Russo was self-sufficient, functional in production oriented jobs requiring little independent decision making and had the ability to manage the mental demands of many types of jobs not requiring complicated tasks. Further, Russo had no abnormalities in body movement, he had spontaneous and coherent speech, there was no disturbance in thought process or neural sensory distortions, and his mood and affect were found to be situationally appropriate. Finally, Russo's social judgment was found to be appropriate for his age, mental ability and experience, and he maintained a valid driver's license without restrictions. The Court finds that the ALJ's finding that Russo's subjective complaints were inconsistent with his activities and with the medical evidence is supported by substantial evidence in the record.

Finally, Russo argues that the ALJ erred in ignoring the VE's finding that no viable employment would be available under the more severe limitations alleged by Russo including erratic sleep patterns causing twenty-four (24) hour periods of sleep and symptoms so severe that he was precluded from daily activities three weeks a month. The Court finds such contention to be without merit.

Hypothetical questions to vocational experts must accurately portray the claimant's impairments and cannot constitute substantial evidence if the question omitted any impairments that are medically established by the evidence on record. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). ). In posing a hypothetical question to a vocational expert, "the ALJ must accurately convey . . . all of a claimant's credibly established limitations" as determined in the RFC. *Id.* If the hypothetical question does not include "medically undisputed evidence of specific impairments" in the record then "the [VE's] response is not considered substantial evidence." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Here, the hypothetical was premised on the ALJ's RFC assessment that Russo could perform work at all exertional levels with nonexertional limitations as follows: (1) limited to work that is simple and repetitive in nature, involving routine work processes and settings; (2) no high stress work, meaning no high quotas or a required attention to quality production standards; and (3) no engaging in team-type activities and no more than incidental interaction with the public. Based upon the objective medical evidence of record and the testimony of the claimant found to be credible, the severe limitations characterized by Russo in his testimony was properly excluded from both the RFC and the hypothetical.

## VI. CONCLUSION

Based upon the forgoing, the decision of the ALJ finding that Russo was not disabled under the Act is supported by substantial evidence in the record. Accordingly, Russo's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted. The decision of the ALJ is affirmed. An appropriate Order follows.

                                              s/ David Stewart Cercone
                                              David Stewart Cercone
                                              United States District Judge

cc:     Terry K. Wheeler, Esquire
        Michael Colville, AUSA

        (*Via CM/ECF Electronic Mail*)